THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CONSTANTINE DIMITRY, Defendant.

City Court of Rochester, Criminal Branch, June 9, 1937.

*Daniel O'Mara* [*Merle L. Sheffer* of counsel], for the plaintiff.

*Hamlet A. Smyth*, for the defendant.

TOMPKINS, J. The defendant is charged with being a disorderly person under subdivision 1 of section 899 of the Code of Criminal Procedure in that he has left his wife in danger of becoming a burden upon the public and that he has neglected to provide for her according to his means. The defendant's wife is the complainant.

The defendant, twenty-two, is a resident of the city of Utica. His wife, twenty, was a resident of the city of Rochester both when she became engaged to him in January, 1936, and when married to him the following August. Upon her marriage she went to live with the defendant in the city of Utica. They occupied a small suite of rooms in the same building in which the defendant's parents were living, but separate therefrom. Within a month or two after the marriage difficulties not wholly unusual arose in the newly-created home. The bride apparently became homesick for her parents and her Rochester home. She felt that she was not wanted by her husband's father and mother. She made several trips from Utica to Rochester between October, 1936, and March,

1937, staying several days on each occasion. Letters passed between her and her husband during this period of absence. From these letters it is apparent that she tried to induce, and at times even insisted, that her husband come to Rochester and find a job in her home city; that she could not be happy in Utica. Her husband, the defendant, sent her money on various occasions to return to Utica, and urged her to return both for his sake and that of the child she was carrying. I am satisfied from this correspondence that his desire to have her return to Utica and live with him in the little home he provided was deep and genuine, and that her refusal to return was due largely to her homesickness for her parents, doubtless somewhat to her condition and also in part to her feeling that she was not welcomed by her husband's parents, and that he was too much dominated by his mother. Nevertheless, her husband had provided a suitable home for her. It was open to her and he was genuinely desirous that she return and live with him.

The defendant by his attorney moves to dismiss the proceeding upon the ground that this court has no jurisdiction for the reason that the defendant is a resident of Utica and that the complainant, his wife, became a resident of Utica upon her marriage to the defendant, and that the city of Rochester is not liable for her support.

Title VII of part VI (§ 899 *et seq.*) of the Code of Criminal Procedure relates to " disorderly persons " and governs the procedure concerning them. These persons are not charged with the commission of either a misdemeanor or a felony. The term " disorderly persons " includes not only delinquent husbands and fathers, but also " fortune tellers, " " tipplers, " " common showmen, " " rope dancers, " card players in public places, and " other disorderly persons. " They are prosecuted by a " complaint on oath " to a magistrate who must issue a warrant for their arrest. On conviction, by confession or proof, the magistrate must require a bond of the delinquent husband to the county or city poor official that he will pay for a year a reasonable sum for the support of the neglected wife and children; of other offenders, that they will reform their unsavory ways for a twelve month. On failure to provide the bond, the recalcitrant or unfortunate, as the case may be, *pater familias* may be incarcerated " at hard labor " for six months, or he may be placed on probation for three years and required to pay a reasonable sum for the support of the wife and children.

Of what offenders has the magistrate jurisdiction on being presented with a sworn complaint? On this very vital subject title VII is wholly silent. It must be determined largely by analogy and fundamental principles. It is generally held that the crime must be prosecuted in a court having jurisdiction of the locality where it was committed. By section 56 of the Code of Criminal

Procedure Courts of Special Sessions have jurisdiction of crimes committed in their respective counties. By section 475 of the Rochester Charter (Laws of 1907, chap. 755, as amd. by Laws of 1918, chap. 495) the City Court has exclusive jurisdiction of misdemeanors committed within the city of Rochester.

The offense of being a disorderly person is neither a misdemeanor nor a felony. It is *sui generis,* and, therefore, is not expressly governed by the provisions referred to. It is a proceeding before a magistrate without a jury. It is not a trial before a court, with or without a jury. A judge of the City Court of Rochester is a magistrate, and by section 473 of the city charter, he has, in addition to the powers of the justice of peace, such powers as are conferred on him by law. Therefore, he has the powers conferred on magistrates by title VII of the Code of Criminal Procedure (*supra*). If misdemeanors must be tried in the county where committed it would be an anomaly if " disorderly persons " could be made to answer in any county or city other than where the offense was perpetrated. It would be unjust to the offender. The law seeks to avoid injustice.

To determine where the offense is committed we must look to the meaning of the clauses included in subdivision 1 of section 899 of the Code of Criminal Procedure, which reads as follows: " The following are disorderly persons: 1. Persons who actually abandon their wives or children, without adequate support, or leave them in danger of becoming a burden upon the public, or who neglect to provide for them according to their means."

" Actual abandonment " is desertion without intention of returning. (*Williams* v. *Williams,* 130 N. Y. 193; *People ex rel. Comrs. of Charities* v. *Cullen,* 153 id. 629, 639.) It is a single act consummated when the husband deserts. If he leaves his wife in the home they together occupied that is the place of the offense. The courts of his home town, city, or county have exclusive jurisdiction. If, however, he takes his wife to any other town, city or county and there deserts her, the offense is there committed, and the courts of that locality have jurisdiction. The wife, however, may return to the common residence, and if her husband then leaves her in danger of becoming a public burden, he may be then prosecuted in the courts of their common residence.

The second clause of subdivision 1 of section 899 reads: " Or leave them in danger of becoming a burden upon the public." " Leaving a family in danger of becoming a public burden consists in remaining away from the wife and children at a time when they may become such burden. The offense is continuous while the danger exists. The leaving may be temporary. When the husband originally left, there may have been no immediate danger.

If danger arises, he must return, or provide — if able." (*People* v. *Gross*, 161 Misc. 514, 517.) Where is the offense of " leaving " committed? Is it where the wife actually is when the complaint is made to the magistrate? Not necessarily. It is where she is, only if she is there, either with her husband's consent, or because he illegally refuses to provide for her in the town or city where he resides. While the husband, so long as the marriage relations continue, is obliged to provide a suitable home for the wife, if he offers and is ready to provide such a home, he is not required to support her elsewhere. (*People* v. *Schenkel*, 258 N. Y. 224, 228.) If he so provides in good faith he may not be prosecuted elsewhere. The bond must run to the municipality which is liable for her support.

The third clause reads " or who neglects to provide for them according to his means." This is a separate offense not dependent upon the wife or children being in danger of becoming a public burden. (*People* v. *Gross*, 161 Misc. 514.) What is the *locus* of this offense? What has already been said regarding the prior offense applies here. It is not necessarily where the wife is then residing; unless she is living there with the husband's consent, express or implied, or, because he has illegally failed to provide her with a suitable home where he resides.

In this most unfortunate proceeding before us the defendant has not at any time abandoned his wife. She has left the home he provided for her. While she went to her parents' home in Rochester on several occasions with his consent, he has not consented to her remaining there. He has beseeched her to return to their little home in Utica, both for his sake and for the baby to be born. He has sent her money for the return trip. All in good faith. She has refused, insisting that he locate in Rochester. This is unreasonable. He has a job in his home city of Utica and would stand little chance of obtaining one here. He has not left her in Rochester in danger of becoming a public burden, within the meaning of the statute. Nor may he be compelled in this court to support her according to his means. His door is and has been open to her in good faith to return to Utica. He may not be compelled to maintain her in the home of her parents in Rochester.

That it might be wise for him to consider her condition, her age, her homesickness at this critical time for her mother, and to let her, for these reasons, remain with her parents until after the birth of her child in July, is a suggestion the magistrate, considering the inexperience of this really fine young couple, feels impelled to make.

The defendant is discharged and the proceeding is dismissed.